AO 91 (Rev. 11/11)  Criminal Complaint (approved by AUSA Pozos _FMP_)                                  17-067

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| United States of America<br>v.<br>David T. Landis<br><br>*Defendant(s)* | ) ) ) ) ) ) ) Case No. 17-914-M |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 22, 2017__ in the county of __Montgomery__ in the __Eastern__ District of __Pennsylvania__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1), (b)(1)(C) | Possession of a controlled substance with intent to distribute, that is, furanyl fentanyl and U-47700, both Schedule I controlled substances. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Albert Cabrelli, Special Agent, HSI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __July 5, 2017__

_____
*Judge's signature*

City and state: __Philadelphia, PA__     Hon. Elizabeth T. Hey, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT

I, Albert Cabrelli, being duly sworn, states as follows:

## INTRODUCTION

1. I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigation (HSI). I have been employed as a Special Agent since August of 2010. Prior to that, I was a Special Agent with the United States Naval Criminal Investigative Service from September 1999 through April of 2007, followed by the United States Nuclear Regulatory Commission, Office of Investigations from April 2007 through August 2010. I am currently assigned to the Cyber Crimes Investigation Group in Philadelphia and am authorized to investigate violations of federal laws and execute search and arrest warrants. In my experience as a Special Agent with HSI, I have prepared, assisted and participated in the execution of numerous search warrants.

2. I have received formal training, as well as extensive on the job training, relative to the investigation of the importation, transportation, sales, manufacturing, and distribution of controlled substances. During the course of my participation in investigations of drug trafficking organizations, I have gained knowledge in the use of various investigative techniques including the utilization of physical surveillance, undercover agents, confidential sources, controlled purchases of illegal narcotics, electronic surveillance, consensual recordings, investigative interviews, trash searches, mail covers, and financial investigations. I have directed and/or participated in numerous drug and bulk cash trafficking investigations conducted by HSI and other law enforcement agencies that resulted in the arrest of numerous subjects, the seizure of

1

controlled substances, and the seizure of property and other assets. While participating in these and other criminal investigations, I have executed search warrants on businesses, residences, and vehicles. As a result of my training and experience, interactions with other Special Agents, Task Force Agents/Officers, and other drug investigators, I have become knowledgeable regarding the distribution and trafficking methods employed by criminal organizations to smuggle, safeguard, store, transport, and distribute controlled substances, and to collect, conceal, and transport the financial proceeds that result from such activities.

3. I have participated in numerous investigations in which I have also interviewed individuals who have been directly and indirectly involved in the importation, transportation, and distribution of illegal drugs, controlled substances and illicit proceeds. I have also worked extensively with numerous confidential informants and cooperating defendants.

4. This affidavit is being submitted in support of a Criminal Complaint and Arrest Warrant for the arrest of David T. LANDIS on a charge of possession of a controlled substance with intent to distribute, that is, furanyl fentanyl and U-47700, both Schedule I controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

5. This affidavit is based upon my personal knowledge, experience and training, and other information developed during the course of this investigation. This affidavit is also based upon information and experience imparted to me by other law enforcement officers. Since this affidavit is being submitted for the limited purpose of obtaining an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish probable cause for the arrest of David T. LANDIS on

the specific charge of possession with intent to distribute a controlled substance.

**FACTS ESTABLISHING PROBABLE CAUSE**

6. On or about February 22, 2017, a priority mail express international parcel (hereinafter referred to as "Parcel #1") was sent from Hong Kong, China via the United States Postal Service. The parcel was opened pursuant to border search authority of an international parcel and was found to contain approximately 810 grams of a white/off-white powder substance. The parcel was addressed to David LANDIS, 8300 Ridge Pike, Unit B-2030, Philadelphia, Pennsylvania 19128. Through your affiant's training, experience, and knowledge, I know that the country of China is a major manufacturer and distributor of synthetic narcotics throughout the world. Law enforcement verified that the address of 8300 Ridge Avenue, Philadelphia, Pennsylvania 19128 is an address for a U-Haul Moving and Storage location in Philadelphia, Pennsylvania. On March 11, 2017, the white/off-white substance was tested by a chemist at the U.S. Customs and Border Protection, New York Laboratory and presumptively identified as U-47700, a Schedule I controlled substance. Furthermore, this material appears to be mismanifested, meaning that the parcel had a list of contents on its label that did not match the actual contents of the package, which is a common technique to avoid detection by law enforcement in identifying parcels that contain illegal substances entering the United States.

7. On March 15, 2017, a first-class international service package (hereinafter referred to as Parcel #2) being sent via the United States Postal Service was opened pursuant to U.S. Customs Extended Border Search by a Special Agent with the Philadelphia Homeland Security Investigations. Inside of the parcel contained two aluminum colored bags with a

white/off white powdery substance, which is suspected to contain a synthetic narcotic. The substance will be sent to a laboratory for analysis. The total weight of the aluminum bags and powder substance revealed an approximate weight of one pound and fourteen ounces. The parcel was sent from MDD, P. O. Box No. 96506 at Tsim Sha Tsui, Post Office Hong Kong, Hong Kong SAR. The parcel was addressed to U-Haul Moving and Storage, C/O David LANDIS, Storage Unit B-2030, 8300 Ridge Pike, Philadelphia, Pennsylvania 19128, Unites States, Philadelphia 19128, United States of America.

8.     A federal subpoena for account information and all shipments that were conducted by David T. LANDIS was served on www.stamps.com, which is a website that advertises postage on demand and where one can print postage shipping labels. According to www.stamps.com, David T. LANDIS opened an account under the username 610Dave610 on April 26, 2016. David T. LANDIS used his real name for the account and listed his license mailing address and license physical address as 2615 Dogwood Lane, Norristown, Pennsylvania 19401. From the time David T. LANDIS' account was opened in April 2016 until March 16, 2017, a total of 2,902 shipments were made using this account and cost $7,733.14 in postage fees. These shipments consisted of first class mail, international first class mail, and priority mail that were shipped all over the United States in what your affiant believes are retail amounts of controlled substance due to the weight of the parcels.

9.     Law enforcement conducted an analysis of all of the shipments that were listed under David T. LANDIS' www.stamps.com account. The following is a breakdown of the shipments, listing the return address associated with the shipments and David T. LANDIS:

4

a.  From April 27, 2016 to May 12, 2016, there was a total of 108 shipments listed on the account that listed the return address as Ace Dist., 4405 Banks Lane, Dover, Delaware 19904.

b.  From May 15, 2016 to June 8, 2016, there was a total of 148 shipments listed on the account that listed the return address as ASE Distributers, 3420 Kensington Avenue, Philadelphia, Pennsylvania 19125.

c.  On June 10, 2016, there was a total of six shipments listed on the account that listed the return address as ASE, 8201 Henry Avenue, Philadelphia, Pennsylvania 19128.

d.  From June 10, 2016 to June 14, 2016, there was a total of 39 shipments listed on the account that listed the return address as ASE Distributers, 3420 Kensington Avenue, Philadelphia, Pennsylvania 19125.

e.  From June 15, 2016 to August 2, 2016, there was a total of 332 shipments listed on the account that listed the return address as ASE Distributers, 701 Summit Avenue, Philadelphia, Pennsylvania 19128.

f.  On August 2, 2016, there was one shipment listed on the account that listed the return address as David T. LANDIS, 2615 Dogwood Lane, Norristown, Pennsylvania 19401. As detailed in this affidavit and coupled with the facts of this case, this address is David T. LANDIS' residence.

g.  From August 3, 2016 to March 16, 2017, there was a total of 2,268 shipments listed on the account that listed the return address as ASE Distributers, 701 Summit Avenue, Philadelphia, Pennsylvania 19128.

10. According to law enforcement intelligence databases, David T. LANDIS and/or Ace Dist. and/or ASE Distributers are not associated with any of the addresses noted above except for his own home. One of the addresses is fictitious, one is a vacant lot, and others are buildings where neither David T. LANDIS nor any variation of the company name ASE Distributors exist. Two of the addresses, however, are in close proximity to the U-Haul Moving and Storage facility where David T. LANDIS was receiving his parcels sent from China. Through my training, experience, and knowledge of narcotics trafficking, your affiant knows that

5

individuals who send parcels through a common mail carrier usually use fictitious return addresses and/or vacant lots to avoid the detection of law enforcement. Fictitious return address are commonly used because in the event law enforcement seizes the parcel, the likelihood of the individual who sent the parcel being identified is extremely low due to the fictitious return information.

11. On March 17, 2017, law enforcement spoke to the manager of the U-Haul Moving and Storage facility located at 8300 Ridge Avenue, Philadelphia, Pennsylvania 19128. The troopers were conducting themselves in an undercover capacity and inquiring about the process to rent a storage locker at the facility and the process if they had a parcel sent to the facility. The manager said that he has only one customer who receives small packages that are addressed to the facility in care of the customer's name, which they hold at the front counter for the customer until he arrives.

12. A check of a law enforcement database showed that an individual has received approximately 17 shipments from June 2016 through March 2017 sent to U-Haul Moving and Storage of Roxborough, 8300 Ridge Avenue, Philadelphia, Pennsylvania 19128. The shipments are all addressed to c/o "David LANDIS," "DAVID," or "David Land Storage." The shipments all appear to originate in China and are categorized as various items to include "hair tonic," "gift," "cable," "electronic products," and other innocuous terms.

13. On March 21, 2017, law enforcement obtained a Commonwealth of Pennsylvania Search Warrant to search David T. LANDIS' U-Haul storage unit, B-2030, located at U-Haul Moving and Storage, 8300 Ridge Avenue, Philadelphia, Pennsylvania 19128. On that same date,

law enforcement obtained a Commonwealth of Pennsylvania Search Warrant to search David T. LANDIS' residence, located at 2615 Dogwood Lane, East Norriton, Pennsylvania 19401.

14.     On March 22, 2017 at approximately 0740 hours, David T. LANDIS was observed operating the 2016 black colored Jeep Wrangler, bearing Pennsylvania Registration KCX-7870, near his residence. Law enforcement conducted a traffic stop on David T. LANDIS' Jeep Wrangler pursuant to this investigation. David T. LANDIS voluntarily admitted that he had a pistol in his right front jeans pocket when law enforcement approached his Jeep Wrangler and that he had a concealed weapons permit inside of his wallet. A loaded Keltec .380 caliber semi-automatic pistol, bearing serial number J4262, was then retrieved from David T. LANDIS' right front jeans pocket. The firearm had one live round chambered in the weapon and five live rounds in the magazine of the firearm. At this time, David T. LANDIS was advised that the police were conducting an investigation and he agreed to return to his residence.

15.     On March 22, 2017 at approximately 0750 hours, law enforcement interviewed David T. LANDIS at his kitchen table inside of his residence. David T. LANDIS had been advised that he was not under arrest and he did not have to speak to law enforcement. David T. LANDIS related that he was previously employed as a Deputy Sheriff with the Montgomery County Sheriff's Department, but no longer worked there. David T. LANDIS stated that one day, he was watching television and saw a television commercial for "bath salts." David T. LANDIS could not remember the specific year in which he saw this commercial. David T. LANDIS stated that he ordered a personal amount of "bath salts" from the website to help him sleep. David T. LANDIS related that he remembered that when the "bath salts" arrived, he

7

noticed that they were shipped from China. After David T. LANDIS ordered his first order of "bath salts" in 2013 or 2014, he began corresponding with an individual named "Alex" regarding procuring more "bath salts" via electronic mail. David T. LANDIS stated that the only way he and "Alex" would communicate was through electronic mail. David T. LANDIS voluntarily showed investigators his cellular telephone and investigators noted "Alex's" electronic mail address as doer8@live.cn, a Chinese based electronic mail address. Ultimately, David T. LANDIS stated that he began to work with "Alex" to re-distribute the "bath salts" to customers around the United States and elsewhere.

16. According to David T. LANDIS, in early 2016, "Alex" sent him an electronic mail message inquiring if he would like to "cut down" on his shipping costs and re-distribute the "bath salts" to customers around the United States and elsewhere. David T. LANDIS related that he began shipping what David T. LANDIS called "bath salts" to other people in or around February or March 2016. Investigators asked David T. LANDIS if he knew "bath salts" were illegal and David T. LANDIS said, "So are fireworks, but people can still get them." David T. LANDIS also admitted to investigators that he knew "bath salts" were banned. David T. LANDIS related that all of the shipments listed on his www.stamps.com account, were shipments of "bath salts" to their retail customers. David T. LANDIS went on to say that he has shipped "bath salts" all across the United States of America and to foreign countries as far away as Australia, Austria, Canada, Great Britain, Germany, Japan, and Switzerland. Furthermore, David T. LANDIS related that he started a "drop" company, which investigators know to mean a fictitious company, to send the shipments of "bath salts" to their customers. David T. LANDIS

8

related that he would use the address of 8300 Ridge Avenue, Philadelphia, Pennsylvania 19128, which is a U-Haul Moving and Storage facility, to receive his parcels that were sent from "Alex". David T. LANDIS would then retrieve the parcel from the facility and begin to break down the substances into mason jars by a particular number, which would be inscribed on the outside of the packaging material of the substances. David T. LANDIS related that he mostly broke down the parcels into the mason jars inside of his U-Haul storage locker, which your affiant knows to be U-Haul storage locker B-2030. Once David T. LANDIS received the parcel, he would e-mail "Alex" and provide the tracking number of the parcel that he had received. David T. LANDIS related that after he separated the "bath salts" by number into the mason jars, he would receive an electronic mail message from "Alex" with the customer orders. David T. LANDIS showed investigators an electronic mail message from "Alex" revealing "Alex's" electronic mail address of doer8@live.cn. The electronic mail message was a detailed list of customer orders for synthetic narcotics. Investigators observed order numbers, which were in sequential order, the name of the customer, the address of the customer, the postal code for the customer, country for the customer, telephone number for the customer, and the customer's order. Under the customer order section, investigators observed the weight of the substance the customer ordered, followed by a number identifying the particular substance the customer ordered. David T. LANDIS related that the number ordered by the customer corresponded to the specific number of the substance inside of the mason jars. He further related that if the order was for "1g #38" that meant that the customer wanted one gram of the substance that was inside of mason jar numbered thirty-eight. Once David T. LANDIS received the customer's order from

9

"Alex" via electronic mail, he would remove that particular substance from the mason jar identified by the same number and weigh the substance to the correct amount the customer ordered. Once this was done, he would then place the substance into a clear plastic baggie to mail to the customer. David T. LANDIS related he would then use his www.stamps.com account to pay for postage for the envelope, obtain the tracking number that his www.stamps.com account provided, and print the shipping label onto the envelope to send to the customer. After this was all done, David T. LANDIS would use the United States Postal Service to ship the envelope containing the "bath salts" to the customer by placing the envelope into a mail box. David T. LANDIS would then reply back to "Alex's" electronic mail address with the tracking number of that particular order so that "Alex" knew the order was shipped.

17. Investigators inquired about the shipping prices and the amount of money David T. LANDIS would charge "Alex" for sending these packages containing "bath salts." David T. LANDIS related that each package was between $2.70 to $2.77 for postage. David T. LANDIS would charge "Alex" between $6.00 to $7.00 for postage for the package, plus an additional $5.00 per package. David T. LANDIS related that "Alex" would pay him for the shipping costs and his services by sending him bitcoin via the internet. "Alex" used bitcoin as his method of paying David T. LANDIS. Your affiant is aware that bitcoin is a digital asset or virtual money and can be used as a payment method which narcotic traffickers commonly use to avoid certain federal banking requirements.

18. Pursuant to the execution of the sealed Commonwealth of Pennsylvania Search Warrant at 2615 Dogwood Lane, East Norriton, Pennsylvania 19401, some of the items that were

seized from inside of David T. LANDIS' bedroom include but are not limited to the following: 46 mason jars containing an extremely large amount of different varieties of suspected synthetic narcotic in each mason jar; a .40 caliber Glock 27 semi-automatic pistol, bearing serial number DDZ788US; a .45 caliber Taurus semi-automatic pistol, bearing serial number NYL65427; a .22 caliber Ruger bolt action rifle, bearing serial number 110-00148; empty mason jars, empty plastic baggies and scales; shipping envelopes that contained shipping labels produced from David T. LANDIS' www.stamps.com account; United States Postal Service shipping labels produced from David T. LANDIS' www.stamps.com account; numerous retail size bags of suspected synthetic narcotics, and other drug paraphernalia. Law enforcement checked law enforcement databases, and all of the guns recovered are legally registered to David T. LANDIS.

19.     On March 22, 2017 at approximately 0801 hours, the Commonwealth of Pennsylvania Search Warrant was executed on David T. LANDIS' storage unit, B-2030, located at the U-Haul Moving and Storage facility, 8300 Ridge Avenue, Philadelphia, Pennsylvania 19128 by law enforcement. Pursuant to the execution of the sealed Commonwealth of Pennsylvania Search Warrant on storage unit B-2030, law enforcement recovered items including but not limited to the following: a large black colored Sentry safe, three computer towers, numerous documents related to David T. LANDIS' distribution of suspected synthetic narcotics, six plastic bags containing suspected synthetic narcotics, a variety of different colored capsules and pills, measuring spoons, and empty plastic baggies.

20.     The suspected controlled substances were sent to the Pennsylvania State Police, Bureau of Forensic Services, Bethlehem Regional Laboratory for testing. The substances

recovered from the house of David T. LANDIS, the U-Haul storage facility of David T. LANDIS, and the home of David T. LANDIS' girlfriend included but are not limited to the following:

    a. Furanyl fentanyl, a Schedule I controlled substance (approximately 970 grams);
    b. U-47700, a Schedule I controlled substance (approximately 1,871 grams);
    c. Methoxyacetyl fentanyl, (approximately 84 grams);
    d. ADB-Chminaca (approximately 58 grams);
    e. 4-chloro-alpha-pyrrolidinovalerophenone, 4-chloro-alpha-PVP (approximately 467 grams);
    f. 4-fluoro-pyrrolidinohexanophenone, 4-fluoro-PHP (approximately 345 grams);
    g. Acetylpsilocyn, (approximately 97 grams);
    h. 4-methyl-alpha-ethylaminopentiophenone, 4-MEAP (approximately 209 grams);
    i. n-ethylpentylone (approximately 638 grams);
    j. alpha-ethylaminohexanophenone, n-ethylhexedrone (approximately 248 grams);
    k. mexedrone (approximately 270 grams);
    l. FUB-AMB (approximately 227 grams);
    m. 4-chloroethcathinone, 4-CEC (approximately 256 grams);
    n. 3,4-tetramethylene-alpha-pyrrolidinovalerophenone, TH-PVP (approximately 41 grams);
    o. n-methyl-n-isopropyltryptamine, MiPT (approximately 38 grams);
    p. Marijuana (approximately 39 grams);
    q. BZP (approximately 17 grams);
    r. 3-fluorophenmetrazine (approximately 66 grams);
    s. Alprazolam (approximately 671 grams).

Based on your affiant's training and experience, and the training and experience of other law enforcement officers, the quantities and the wide variety of these controlled substances are not possessed for personal use but are possessed with intent to distribute.

    21. On March 28, 2017, investigators became aware that the United States Postal Inspectors intercepted three (3) additional parcels mailed from China that were addressed to David T. LANDIS and related to this investigation (hereinafter referred to as "Parcel #3," "Parcel #4," and "Parcel #5, respectively). David T. LANDIS provided written consent granting

investigators permission to search these parcels and seize the contents found within each parcel. The parcels contained suspected controlled substances, and all substances have been sent to a laboratory for analysis.

22. During the course of this investigation, law enforcement obtained search warrants for email accounts related to the investigation. In the course of reviewing the results, law enforcement read years' worth of emails between "Alex" in China and David T. LANDIS, in which the two discussed the quality, quantity, pricing, shipment methods, and ways in which to avoid law enforcement detection. Notably, it was David T. LANDIS who first inquired about becoming a drop shipper for these substances on behalf of "Alex" in the United States.

23. On May 10, 2017, David T. LANDIS voluntarily agreed to be interviewed at the Pennsylvania State Police, Troop K – Skippack Barracks, in reference to this investigation. On May 11, 2017 at 1133 hours, law enforcement read David T. LANDIS his *Miranda* rights, after which David T. LANDIS signed the form, and agreed to speak to law enforcement regarding this investigation without the presence of an attorney. During the interview, David T. LANDIS shared a lot of the same information previously discussed on March 22, 2017. David T. LANDIS related that he made approximately $40,000 in less than a year for shipping synthetic narcotics across the United States and the world for "Alex" and the Chinese based drug trafficking organization. David T. LANDIS also admitted to smoking marijuana and using "bath salts" while he was employed as a Deputy Sheriff with the Montgomery County Sheriff's Department.

24. On May 11, 2017 at approximately 1423 hours, law enforcement advised David T. LANDIS that law enforcement had a local warrant for his arrest stemming from this

investigation. David T. LANDIS was taken into custody without incident inside of the interview room at the Pennsylvania State Police, Troop K – Skippack Barracks.

## CONCLUSION AND REQUEST TO SEAL

25. Based on the facts related above, your affiant has reason to believe that David T. LANDIS was in possession of a controlled substance with intent to distribute, that is furanyl fentanyl and U-47700, both Schedule I controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

26. Because of the sensitive nature of the investigation, I respectfully request that this Affidavit and the accompanying Application, Order, and Warrant be filed under seal. Revealing the existence of these documents would jeopardize the investigation, as other subjects are not currently aware that they are the targets of an investigation.

ALBERT CABRELLI
Special Agent, Homeland Security Investigations

Subscribed to and sworn before me this 5th day of July, 2017.

HONORABLE ELIZABETH T. HEY
*United States Magistrate Judge*

14